UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR RUIZ,<br><br>          Plaintiff,<br><br>    v.<br><br>CORRECTION OFFICER STOUT, et al.,<br><br>          Defendants. | Case No. CV 21-03300-DSF (RAO)<br><br>AMENDED INTERIM REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE [33] |

    This Amended Interim Report and Recommendation is submitted to the Honorable Dale S. Fischer, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.    INTRODUCTION

    Plaintiff Victor Ruiz ("Plaintiff") is a former California state prisoner proceeding *pro se* and *in forma pauperis* in a civil rights action pursuant to 42 U.S.C. § 1983. The operative complaint is Plaintiff's First Amended Complaint ("FAC"). Dkt. No. 16. Defendants H. Blagg ("Blagg"), C. Burkhammer ("Burkhammer"), J. Stout ("Stout"), and M. Mangayao ("Mangayao") (collectively, "Defendants") filed

a Motion to Dismiss ("Motion") on February 9, 2022. Dkt. No. 33. Plaintiff filed his Opposition ("Opposition") on March 11, 2022. Dkt. No. 36. Defendants filed their Reply ("Reply") on March 18, 2022. Dkt. No. 37. On August 9, 2022, Plaintiff voluntarily dismissed his action as to Blagg. Dkt. No. 47. For the reasons set forth below, the Court recommends that Defendants' Motion be granted-in-part and denied-in-part.[1]

## II.     SUMMARY OF RELEVANT ALLEGATIONS[2]

### A.     Claim 1: Eighth Amendment Deprivation of Meals

Plaintiff alleges that in early 2019, Stout denied Plaintiff adequate meals. FAC ¶ 1. Plaintiff had surgery because of colon cancer, which left him with complications that caused him to use the restroom more than average. *Id.* He was unable to arrive in a timely manner for morning breakfast because of these complications. *Id.* ¶¶ 1-2. This problem was occurring up to four times a week for a couple of months. *Id.* ¶ 3. Plaintiff tried to explain this to Stout, but Stout would not let him get his breakfast. *Id.* ¶ 4. Every time Plaintiff was denied breakfast, multiple inmates were still dining, and the chow hall doors were open with plenty of food still available. *Id.* ¶ 5. Specifically, on May 9, 2019, Plaintiff arrived with two other inmates ahead of him. *Id.* ¶ 7. While Stout allowed the two other inmates to proceed with breakfast

---

[1] An Interim Report and Recommendation issued on March 31, 2022. Dkt. No. 39. In response, Plaintiff requested leave to file an amended complaint. Dkt. No. 41. The Court granted the request. Dkt. No. 45. Plaintiff then lodged an incomplete amended complaint. *See* Dkt. No. 46. The Court directed Plaintiff to file a complete amended complaint. *Id.* Instead of filing a complete amended complaint, Plaintiff chose to voluntarily dismiss his action as to Blagg only. Dkt. No. 47. Because Defendants have not filed an answer or a motion for summary judgment, Plaintiff's dismissal is without prejudice and does not require a court order. *See* Fed. R. Civ. P. 41(a)(1). The Court construes Plaintiff's dismissal as an election to proceed on the remaining claims of his First Amended Complaint. The Court issues this Amended Interim Report and Recommendation ("Amended Interim Report") to reflect Plaintiff's dismissal of his claims against Blagg.

[2] Because Plaintiff dismissed his Fourteenth Amendment claim against Blagg, this Amended Interim Report will not provide a summary of that claim.

because they responded that they had been getting their medication, Stout refused Plaintiff breakfast when Plaintiff responded that he was using the restroom. *Id.* ¶ 8. Plaintiff tried to explain his medical history, but Stout did not let him finish. *Id.* ¶ 10. Stout ordered Plaintiff to put his tray down and grab his lunch. *Id.* Stout stated that he had the authority to deny inmates their breakfast. *Id.* ¶ 12. Plaintiff obeyed the order and grabbed his lunch. *Id.* ¶ 13.

Plaintiff wrote a 602-appeal staff complaint. *Id.* Days later, Stout called Plaintiff out for an interview about the complaint. *Id.* ¶ 14. Stout acknowledged what he was doing was wrong and that he had to rush and close the chow hall because he was needed elsewhere. *Id.* ¶ 15. Stout asked Plaintiff to consider withdrawing his complaint. *Id.* ¶ 17. Plaintiff refused, and Stout forwarded the complaint to Defendant Burkhammer. *Id.*

### B. Claim 2: First Amendment Retaliation

Burkhammer summoned Plaintiff for an interview about his complaint on May 29, 2019. *Id.* ¶ 18. Burkhammer said Stout was now aware of Plaintiff's medical problems and would not deny him breakfast anymore, so Plaintiff needed to withdraw his complaint. *Id.* ¶ 19. When Plaintiff explained that he wanted to exhaust his administrative remedies, Burkhammer responded angrily that Plaintiff has no rights and that he could go to Plaintiff's cell and find something illegal. *Id.* ¶¶ 23-24. Burkhammer said he would write Plaintiff a chrono for his medical condition but that Plaintiff had to withdraw his complaint. *Id.* ¶ 26. Burkhammer then said if Plaintiff did not withdraw his complaint, Plaintiff would be on Burkhammer's radar, it would be "real bad" for Plaintiff, and Plaintiff would regret it. *Id.* Plaintiff was intimidated and coerced to withdraw his complaint. *Id.* ¶ 27.

A week later, Burkhammer provided Plaintiff with the chrono but warned Plaintiff not to use it every day and to not let Burkhammer find out Plaintiff was trying to file 602s against correctional officers again. *Id.* Between May and October

///

2019, Burkhammer verbally harassed Plaintiff and reminded him of his threats about filing complaints against correctional officers. *Id.* ¶ 29.

In late September or early October, Plaintiff was using the restroom near Burkhammer's office, when Burkhammer walked in and ordered Plaintiff to stand next to the wall. *Id.* ¶ 30. Plaintiff was forced to submit to a strip search without probable cause. *Id.* Burkhammer told Plaintiff he heard that Plaintiff had a jailhouse lawyer doing a lawsuit and 602 on him. *Id.* When Plaintiff responded that he didn't know what Burkhammer was talking about, Burkhammer shoved Plaintiff against the wall and punched Plaintiff in the stomach. *Id.* Burkhammer threatened Plaintiff that his beatings and harassment would continue until Plaintiff withdraws any 602s or lawsuits. *Id.* ¶ 31.

On October 21, 2019, there was a fight in the yard. *Id.* ¶ 32. Plaintiff was listening to music and looked towards the tower where Mangayao was positioned to see if Mangayao was going to initiate the alarm. *Id.* Responding officers identified and handcuffed the alleged suspects and removed them from the yard. *Id.* ¶ 33. Officers began to conduct a search for weapons, which included searches of the inmates per Burkhammer's orders. *Id.*

Officer Self began to search Plaintiff. *Id.* ¶ 34. Burkhammer was clearing inmates back to their housing cells upon completion of the search. *Id.* Once Burkhammer saw Plaintiff, he instructed Officer Self to place Plaintiff in handcuffs. *Id.* ¶ 36. Plaintiff was the last alleged suspect taken out of the yard and placed in a holding cell. *Id.* ¶ 37.

About two hours later, Plaintiff saw Mangayao and asked if Mangayao saw him involved. *Id.* ¶ 38. Mangayao said "no" and kept walking. *Id.* Soon after, Mangayao and Burkhammer were staring at Plaintiff while talking to each other, and Mangayao made a "cutthroat motion" with his hand. *Id.* ¶ 39.

Plaintiff was served with a lock-up order and advised that he was being charged with attempted murder. *Id.* ¶ 40. He was told that the matter was going to

be referred to the district attorney for prosecution, but the district attorney dismissed the charges on March 15, 2021. *Id.* ¶ 40 & Ex. D. Plaintiff was made aware from the incident report that Burkhammer and Mangayao lied on the report. *Id.* ¶ 41. Mangayao's report was the one conflicting incident report and Mangayao was the only officer who identified Plaintiff. *Id.* ¶ 43.

### III.   LEGAL STANDARD FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) permits dismissal, as a matter of law, "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Medical Center,* 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). To survive a Rule 12(b)(6) motion, a plaintiff must allege enough facts to state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). Plausibility does not mean probability, but does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A pleading that offers mere "labels and conclusions" or "a formulaic recitation of a cause of action's elements will not do." *Twombly,* 550 U.S. at 555.

In considering a motion to dismiss, a court must accept all factual allegations in the complaint as true "and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th Cir. 2005). *Pro se* pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (citation omitted). But the liberal pleading standard "applies only to a plaintiff's factual allegations." *Neitzke v. Williams,* 490 U.S. 319, 330 n.9, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). The

Court will not accept as true unreasonable inferences or legal conclusions cast in the form of factual allegations. *Ileto v. Glock Inc.,* 349 F.3d 1191, 1200 (9th Cir. 2003). In giving liberal interpretations, a court may not supply essential elements of a claim not initially pled. *Pena v. Gardner,* 976 F.2d 469, 472 (9th Cir. 1992).

In considering a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984).

The Court may consider exhibits attached to the complaint and incorporated by reference, *see Petrie v. Electronic Game Card, Inc.*, 761 F.3d 959, 964 n.6 (9th Cir. 2014), Fed. R. Civ. P. 10(c), but is not required to blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences, nor accept as true allegations that are contradicted by the exhibits attached to the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.   DISCUSSION

### A.   The Parties' Arguments[3]

#### 1.   Defendants' Motion

Defendants move to dismiss Plaintiff's Eighth Amendment claim against Stout, Plaintiff's First Amendment claim against Stout and Blagg, Plaintiff's Fourteenth Amendment claim against Blagg, and Plaintiff's official capacity claims.

Defendants contend that Plaintiff fails to state an Eighth Amendment claim because Plaintiff was not subjected to a severe deprivation. Mot. at 9. Defendants argue that Plaintiff alleges one meal denied by Stout on May 9, 2019, which is a *de minimis* deprivation. *Id.* To the extent Plaintiff is attempting to allege that Stout

---

[3] Because Plaintiff dismissed his Fourteenth Amendment claim against Blagg, this Amended Interim Report will not provide the parties' arguments for that claim.

6

denied him breakfasts prior to that date, Defendants assert that Plaintiff's allegations are uncertain as to the number of times this occurred and whether Stout denied breakfast on each occasion. *Id.* at 10. Additionally, Defendants contend that Plaintiff makes no allegation that he suffered or incurred any medical effects because of the denial of breakfast. *Id.* Defendants contend that Stout is entitled to qualified immunity because the FAC fails to state a constitutional violation. *Id.* at 17.

Defendants state that while Plaintiff's retaliation allegations only relate to Burkhammer and Mangayao, Plaintiff later asserts that all Defendants retaliated against him. *Id.* at 11 (citing FAC at 8-9). To the extent Plaintiff is alleging a retaliation claim against Stout and Blagg, Defendants assert that Plaintiff fails to state a claim. *Id.* at 11-12.

Finally, Defendants move to dismiss the official capacity claims for damages. *Id.* at 18.

2. Plaintiff's Opposition

Plaintiff argues that he pleaded an Eighth Amendment claim against Stout, and Burkhammer's chrono is an admission that Plaintiff was denied meals. Opp'n at 3. Plaintiff also points to Stout's admission and apology. *Id.* Plaintiff contends that he need not allege the specific time and place for each incident. *Id.* at 4.

Plaintiff clarifies that he erred in naming Blagg and Stout on page 9, number 4 of his FAC. Opp'n at 17. Plaintiff requests to strike Blagg and Stout's names from page 9, number 4. *Id.* at 18.

3. Defendants' Reply

Defendants reply that an apology for denial of breakfasts or the authoring of a chrono do not amount to admissions that Plaintiff's constitutional rights were violated. Reply at 3. Defendants argue that the FAC fails to allege a sustained deprivation because of the lack of specificity regarding instances in which Stout denied Plaintiff meals and failure to allege any medical issues. *Id.*

///

7

Defendants clarify that they do not challenge Plaintiff's First Amendment claim against Burkhammer and Mangayao and request the First Amendment claim against Stout and Blagg be dismissed pursuant to Plaintiff's statement that he did not intend to bring that claim against these two defendants. *Id.* at 3-4.

**B.  Legal Standards**

  1.  Section 1983

To state a claim under Section 1983, Plaintiff must plead that Defendants, while acting under color of state law, deprived him of a right created by federal law. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). Vicarious liability is unavailable in a Section 1983 claim. *Iqbal*, 556 U.S. at 676. To state a viable Section 1983 claim against an individual, a plaintiff's complaint must allege that the individual's own actions caused the particular constitutional deprivation alleged. *Id.* Individuals cause a constitutional deprivation when they: (1) affirmatively act, participate in another's affirmative act, or fail to perform an act they are legally required to do that causes the deprivation; or (2) set in motion a series of acts by others which they know or reasonably should know would cause others to inflict the constitutional injury. *See Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (citation omitted). Allegations regarding causation must be individualized and must focus on the duties and responsibilities of the defendant "whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).

  2.  Official Capacity and Individual Capacity Claims

A state official sued in his or her official capacity generally is not a "person" subject to suit under Section 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed.2 d 45 (1989). An official capacity suit is a suit against the official's office, and as such, is actually a claim against the state itself. *Id.; Kentucky v. Graham,* 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). The Eleventh Amendment prohibits federal jurisdiction over claims against

a state unless the state consents or Congress has abrogated its immunity. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99-100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). California has not consented to suits under Section 1983 in federal court, and the Supreme Court has held that Section 1983 does not abrogate Eleventh Amendment immunity. *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985), *superseded by statute on other grounds*; *Graham,* 473 U.S. at 169 n.17.

"In an injunctive or declaratory action grounded on federal law, the State's immunity *can* be overcome by naming state officials as defendants." *Graham*, 473 U.S. at 169 n.18 (emphasis in original) (citing *Pennhurst,* 465 U.S. 89; *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)); *see also Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985) ("[T]he Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law."). Because the government entity and not the named official is the "real party in interest" in an official capacity suit, "the entity's policy or custom must have played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (quotations omitted). Additionally, *Young* requires "some connection" between the defendant and the enforcement of the alleged unconstitutional act. *See Young*, 209 U.S. at 157. The "connection … 'must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.'" *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) (citing *Los Angeles County Bar Ass'n v. Eu,* 979 F.2d 697, 704 (9th Cir. 1992)).

On the other hand, individual capacity suits "seek to impose liability upon a government officer for actions taken under color of state law." *Hafer*, 502 U.S. at 25. It is enough for the plaintiff to show that the official, acting under color of state law, caused the deprivation of a federal right. *Id.* (citing *Graham*, 473 U.S. at 166).

9

### 3. Eighth Amendment

Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). "[A] prison official violates the Eighth Amendment only when two requirements are met." *Id.* at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* To meet this first objective prong, an inmate must show a denial of "the minimal civilized measure of life's necessities." *Id.* Second, a prison official must have a "sufficiently culpable state of mind." *Id.* In the context of prison-conditions cases, an inmate must show that the prison official was deliberately indifferent to the inmate's health or safety. *Id.* That is, an inmate must show that the prison official knew that the inmate faced a "substantial risk of serious harm" and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Id.* at 847.

"Food is one of life's basic necessities," and the government is obligated to provide those in its custody "with adequate sustenance on a daily basis." *Foster v. Runnels*, 554 F.3d 807, 812-14 (9th Cir. 2009). The repeated and unjustified failure to provide adequate food amounts to a serious deprivation. *Id.* at 814. "The risk that an inmate might suffer harm as a result of the repeated denial of meals is obvious," and an inmate's "right to adequate food is clearly established." *Id.* at 814-15.

### C. Analysis

#### 1. Eighth Amendment Claim against Stout

The Court finds that Plaintiff states a cognizable Eighth Amendment claim against Stout. Although Plaintiff only provides specific details for the May 9, 2019 incident, he alleges that in early 2019, his breakfast "was being denied by correctional Officer Stout," "[t]his perpetual problem was occurring on a daily basis for a couple of months up to four times a week," and Officer Stout "repeatedly" refused to hear or acknowledge Plaintiff's explanation for his tardiness. FAC ¶¶ 1, 3, 4. Construing these factual allegations in the light most favorable to Plaintiff, Plaintiff alleges that

Stout was the officer responsible for denying Plaintiff breakfast up to four times a week over a period of a couple months. The Court next turns to whether this amounts to a sufficiently serious deprivation.

Denial of breakfast up to four times a week for a couple of months amounts to 32 missed meals over two months. This is a much higher frequency of missed meals than the 11 meals over seven months in *Mixon v. Byrne*, 3:17-cv-146 MMD, 2019 WL 3295653, at *1 (D. Nev. May 28, 2019), or the three to five total missed meals in *Jones v. Vasquez*, C-91-2376 MHP, 1999 WL 155692, at *6 (N.D. Cal. Mar. 18, 1999), cited by Defendants.[4] The deprivation alleged by Plaintiff is similar to that addressed in *Foster*, which was a denial of 16 meals over 23 days. 554 F.3d at 812-13. Plaintiff alleges a repeated, sustained, and unjustified failure to provide him with adequate sustenance, and therefore sufficiently states a serious deprivation for a deliberate indifference claim.[5] *See id.* at 814. Defendants do not contend that Plaintiff fails to allege facts for the subjective prong of a deliberate indifference claim and the Court finds Plaintiff's allegations are sufficient. As to qualified immunity, Defendants rely on their argument that the FAC does not establish a constitutional violation. Because the Court finds that the FAC does state a cognizable Eighth Amendment claim, the Court recommends that Stout not be granted qualified immunity at this time.

Accordingly, the Court recommends that Defendants' Motion be denied as to the Eighth Amendment claim.

    2.    <u>First Amendment Claim against Stout and Blagg</u>

Defendants do not move to dismiss Plaintiff's retaliation claim against Burkhammer and Mangayao. *See* Reply at 4. The Court need not address Plaintiff's

---

[4] The two cases are also distinguishable because they were at the summary judgment stage. *See Mixon*, 2019 WL 3295653, at *4; *Jones*, 1999 WL 155692, at *6-7.

[5] Whether Plaintiff received sufficient nutrition from other meals on the days he was denied breakfast such that he suffered no harm is an issue for summary judgment or trial.

arguments as to why he states a claim against these two defendants. *See* Opp'n at 10-15.

Plaintiff confirms that he did not intend to bring a retaliation claim against Stout and Blagg, and requests to strike their names from page 9, number 4 of the FAC. *See* Opp'n at 17-18. Thus, the Court strikes Stout and Blagg from page 9, line 4 of the FAC. Defendants' motion to dismiss the retaliation claim against these two officers is moot.

### 3. Fourteenth Amendment Claim against Blagg

Plaintiff voluntarily dismissed his claims against Defendant Blagg. Dkt. No. 47. This portion of the Motion is moot.

### 4. Official Capacity Claims

Plaintiff's claims are against the individual defendants for their individual conduct, and not for any policy or custom of the prison. Plaintiff does not oppose Defendants' motion to dismiss the official capacity claims for damages against them. The Court recommends that Plaintiff's official capacity claims for damages against Defendants be dismissed with prejudice and without leave to amend.

## V. RECOMMENDATION

For the reasons stated above, IT IS RECOMMENDED that the District Court issue an Order:

(1) Accepting and adopting this Amended Interim Report and Recommendation;

(2) Granting-in-part and denying-in-part Defendants' Motion to Dismiss as follows:

    (a) Dismissing with prejudice and without leave to amend Plaintiff's official capacity claims for damages against Defendants;

    (b) Denying the Motion as moot as to all claims against Blagg and as to the retaliation claim against Stout;

    (c) Denying Defendants' Motion to Dismiss in all other respects; and

(3) Directing Defendants Burkhammer, Stout, and Mangayao to file an Answer within 14 days.

DATED: August 17, 2022

*Rozella A. Oliver*

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.